IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

POOR AND MINORITY
JUSTICE ASSOCIATION; CLAYTON
COWART; MALIK GIBSON; and
TYRIAN HERRING.

      Plaintiffs,

CASE NO: 8:19-CV-T-2889-2TGW

Vs

**INJUNCTIVE RELIEF**
**42 U.S.C. § 1983**

**CHIEF JUDGE, THE TENTH JUDICIAL CIRCUIT
COURT OF THE STATE OF FLORIDA; POLK COUNTY SHERRIF'S OFFICE; and
G4S SECURE SOLUTIONS USA, et al.**

      Defendant(s).
_____/

## FIRST AMENDED COMPLAINT

COMES NOW, the Plaintiffs, Poor and Minority Justice Association ("PMJA"); Clayton Cowart ("Cowart"); Malik Gibson ("Gibson"), Tyrian Herring ("Herring"); and an entire class of unnamed grievants, who have been affected by the wrongful conduct named in this action, by and through their undersigned legal counsel, and file this original complaint against the POLK COUNTY SHERIFF'S OFFICE ("Sheriff's Office");   G4S Secure Solutions USA ("G4S"); and the STATE OF FLORIDA ("Chief Judge, the 10th Judicial Circuit Court of the State of Florida").

### A. Jurisdictional Statement

1.    The U.S. District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and pendent state-law tort action pursuant to Fla. Stat. 768.28.

2.    That the federal question involved in this case arises under Title II of the 1964 Civil

Rights Act ("Public Accommodations—Race); and 42 U.S.C. § 1983 Deprivation of Constitutional Civil Rights Under Color of State Law, to wit: the reliance upon an official "policy, rule, custom, or law" to deprive the said Plaintiffs of rights pursuant to the "Equal Protection Clause" of the Fourteenth Amendment, U.S. Constitution; "Free Exercise of Religion Clause," "Right to Petition the Government Clause," and "Freedom of Speech Clause."

3. That the Plaintiff PMJA is a sectarian non-profit organization that is affiliated with the Church of God the Bible Way, Inc., and located in Winter Haven, Florida.

4. The Plaintiff Clayton Cowart is the President of the PMJA and a resident of Winter Haven, Polk County, Florida. He is also the senior pastor of the Church of God the Bible Way, Inc.

5. The Plaintiff Malik Gibson is a member of the PMJA and the Church of God the Bible Way, Inc. and he is a resident of the State of Georgia.

6. The Plaintiff Tyrian Herring is a member of the PMJA and the Church of God the Bible Way, Inc., and he is a resident of the State of Georgia.

7. Plaintiff PMJA is a civil rights organization that concentrates its efforts in protesting abusive police practices and other related civil rights violations. The PMJA's membership is almost entirely African American. Plaintiffs Cowart, Gibson, and Herring, are all African American. And the membership of the Church of God the Bible Way, Inc. is almost entirely African American.

8. The Defendants State of Florida and Polk County operate two separate governmental units which are the subject of this litigation, to wit:

    A. The Defendant Polk County Sheriff's Office is headquartered at 1891 Jim Keene

Blvd., Winter Haven, Florida 33880.

      B.      Defendant State of Florida operates the Tenth Judicial Court to cover Hardee, Highlands, and Polk counties).

      C.      The Tenth Judicial Circuit Court of Florida is located, among several other places, at the Polk County Courthouse, 255 N. Broadway Avenue, Bartow, Florida 33830.

9.      The Defendant G4S Secure Solution USA is headquartered at 405 N. Reo Street, Suite 150, Tampa, Florida 33609.

## STATEMENT OF FACTS

### Introduction

10.      On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson, Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida.

11.      The said protest was organized by the PMJA. There were at least fifty (50) protesters on the scene at the said location mentioned in paragraph 10. Many of the protesters held placards and signs stating: "Hands Up, Don't Shoot!"

12.      The nature of the protest was "racial profiling" and racial discrimination with respect to unscrupulous police practices. The said protest was designed to bring public attention to police brutality in general and to protest the recent police-shooting of a seventeen year-old African American young man named Mike Taylor. This shooting resulted in the death of Mike Taylor.

13.      The said protest was pre-approved by the local government authorities, and it was also an entirely peaceful demonstration.

14. At some point following the commencement of the protest, Plaintiff's Cowart, Gibson, and Herring walked to the Polk County Courthouse to enter into the public area of the building.

    a. At that time, the said courthouse office building was open to members of the general public.

    b. Non-protesters (i.e., persons who were not involved in the above-mentioned protest) were allowed to enter and exit the Polk County Courthouse building.

    c. However, when the said Plaintiffs attempted to walk through the security scanner, a G4S Official and a Deputy Sheriff told them: **"... no one involved in the protest would be granted access to the restrooms."**

    d. After the said G4S Official informed the Plaintiffs that "protesters" could not enter the Polk County Courthouse building, Plaintiff Cowart requested to enter the said building to use the public restroom, and was denied access to the restroom that was inside of the said Polk County Courthouse.

    e. In addition, Plaintiffs Gibson and Herring would have utilized the said public restroom but was denied access to this public facility because of their status as "protesters."

15. Plaintiffs were humiliated, significantly inconvenienced, and subjected to bodily anguish and distress stemming from their inability to utilize the public restroom inside of the Polk County Courthouse.

    a. Plaintiffs were forced to hold their urination and walk several blocks to the next closest restroom; and,

    b. The protesters were forced to end the protest, due to health and sanitation concerns, and lack of access to public restrooms.

16. The above-mentioned denial the Plaintiff's access to a public accommodation was a derogation of the Plaintiff's First Amendment constitutional right to free exercise of religion, freedom speech, and to petition the government to redress grievances and, essentially, re-subjected the Plaintiff's to a form of "Jim Crow" racial segregation.[1] This denial was also a derogation of their Fourteenth Amendment right to "Equal Protection of the Law."

**COUNT I. Title II of the 1963 Civil Rights Act—Public Accommodation ("Race")**

17. The Plaintiff hereby re-alleges and re-states averments 1 through 16, which should be read as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P.

18. The Defendant Sheriff's Office is a local government entity that is tax-payer funded and fully responsible to the citizens of Polk County and to the people of the State of Florida. Its buildings are government buildings, and the Sheriff's building where the Plaintiff's were blocked entrance was open to the general public.

19. The Defendant Sheriff's Office hired or contracted with Defendant G4S to post security guards at the entrance of the said building. The said G4S security guards were charged with administering the policies of the Polk County Sheriff's Office at the security check points at the Polk County Courthouse.

20. When the Plaintiffs attempted to entered the said Polk County Courthouse, the G4S security guards and the Deputy Sheriffs prevented them from doing so, because they were "protesters."

---

[1] See, e.g., "EQUAL ACCESS TO PUBLIC ACCOMMODATION: Although integrating the nation's schools was the first priority of the civil rights movement, the denial of equal access to public accommodations affected all blacks, not just students. Blacks could not use restaurants, bathrooms, water fountains, public parks, beaches, or swimming pools used by whites. They had to use separate entrances to doctor's offices and sit in separate waiting rooms. They could only sit in the balcony or in other designated areas of theaters. They had to ride at the back of streetcars and buses."

21. However, the Plaintiffs were not in the "mode" of protesting; they were carrying no "protest signs"; they were not "chanting protest" songs or poems or the like. They had simply left the group of other protesters to go inside of the building, along with other civilians, to utilize the public restroom.

22. It should be noted here that the nature of the Plaintiff's protest was "racial profiling" and racial discrimination with respect to unscrupulous police practices, and the shooting-to-death of a 17-year old black man.

23. Therefore, the Plaintiffs were blocked from using the public restroom in side of the Polk County Courthouse because they were African Americans (i.e., racial discrimination). Prima facie evidence of "willful" or "intentional" racial discrimination is the fact that (a) the Plaintiffs were all African American and (b) they had been engaged in a protest regarding "racial profiling" and "racial discrimination," with respect to unscrupulous police practices, and the shooting-to-death of a 17-year old African American man.

24. The said refusal to allow the Plaintiffs to use the public restroom at the Polk County Courthouse is reminiscent of the history of official racial segregation in the American South.[2] This unscrupulous act caused mental harm and embarrassment to the Plaintiffs.

WHEREFORE, the Plaintiffs demand:

    A. Trial by Jury.

    B. Judgment against the Defendants for attorney's compensatory and punitive damages.

    C. Affirmative Action, as deemed appropriate by the Court.

---

https://www.virginiahistory.org/collections-and-resources/virginia-history-explorer/civil-rights-movement-virginia/equal-access

D. Injunctive Relief, as deemed appropriate by the Court.

E. Attorney's fees and costs.

F. For whatever additional relief as is deemed just and appropriate by this honorable Court.

**COUNT II. 42 U.S.C. Section 1983; Deprivation of Rights Under Color of Law (FIRST AMENDMENT: Freedom of Religion, Conscience, Speech, and Right of Petition)**

26. The Plaintiff hereby re-alleges and re-states averments 1 through 25, which should be read as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P.

27. On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson, Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida. And while doing so, they exercised a series of rights under the First Amendment, U.S. Constitution:

    a. The right to petition the state or local government for the redress of grievances;

    b. The right and freedom of assembly;

    c. The right and freedom of speech; and,

    d. The right to conscience and the freedom of religion.

28. On date, the Plaintiffs were informed by Defendant G4S and the Deputy Sheriff that Defendant Sheriff's Office or Polk County Courthouse operated a **law, custom, policy and practice of not allowing "protesters" to enter the building**.

29. The said custom, policy and practice of not allowing protesters to enter the Polk County Courthouse curtailed, chilled, limited and restricted the Plaintiff's First Amendment freedom to protest, speak, petition the government, and to freely exercise their religion.

---

[2] Id.

a. First off, the Plaintiffs themselves experienced humiliation and bodily anguish from having to hold their urination and to walk several blocks to the nearest restroom;

b. Second, the protest had to be ended due to sanitation and health concerns, stemming from the lack of access to the restrooms inside of the Sheriff's Office;

c. Third, there is no evidence that when the Plaintiffs attempted to enter the Sheriff's Office, that they were actually in the "mode of protesting" at that very moment when they sought to enter the building; and,

d. Fourth, **the Plaintiffs were not "protestors" at the very moment when the G4S Security Officer blocked them from trying to enter the building, but they were, instead civilians just like all the other citizens who were freely entering and exiting the Sheriff's Office.**

30. The said custom, policy and practice of "not allowing protesters" was wrongfully applied to the Plaintiffs who were at that very moment when they were seeking entrance, non-protesters.

31. At the very moment when the Plaintiffs' sought entrance into the Sheriff's Office, they were in essence **"former protesters"** who not in fact engaging in any protests. Thus, the G4S security officers "retaliated against" the Plaintiffs simply because they had formerly engaged in a protest against the Sheriff's Office, or because they might engage in a protest against the Sheriff's Office at some point in the future. There is no evidence to show that the Security Officer knew whether the Plaintiffs were "done protesting" or "done protesting and going into the Sheriff's Office to transact legitimate business" or "done protesting and going home after using the public restroom." There is also no evidence to show that the G4S security officer reasonably believed that the Plaintiffs were seeking entrance into the building in order to

demonstrate or to launch a protest inside of the Sheriff's Office. This, then, was a clear case of constitutional abuse.

32. WHEREFORE, the Plaintiffs demand:

  A. Trial by Jury.

  B. Judgment against the Defendants for attorney's compensatory and punitive damages.

  C. Affirmative Action, as deemed appropriate by the Court.

  D. Injunctive Relief on behalf the Plaintiffs and on behalf on an entire class of persons who express their First Amendment Rights, as deemed appropriate by the Court.

  E. Attorney's fees and costs.

  F. For whatever additional relief as is deemed just and appropriate by this honorable Court.

### COUNT III.   42 U.S.C. Section 1983; Deprivation of Rights Under Color of Law (FOURTEENTH AMENDMENT: Equal Protection of the Law)

33. The Plaintiff hereby re-alleges and re-states averments 1 through 25, which should be read as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P.

34. On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson, Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida. And while doing so, they exercised a series of rights under the First Amendment, U.S. Constitution:

  a. The right to petition the state or local government for the redress of grievances;

  b. The right and freedom of assembly;

  c. The right and freedom of speech; and,

d. The right to conscience and the freedom of religion.

35. On the same date, the Plaintiffs were informed by Defendant G4S that Defendant Sheriff's Office, Polk County Courthouse, and Polk County operated a **law, custom, policy and practice of not allowing "protesters" to enter the building**.

36. The said custom, policy and practice of not allowing protesters to enter the Sheriff's Office curtailed, chilled, limited and restricted the Plaintiff's First Amendment freedom to protest.

   a. First off, the Plaintiffs themselves experienced humiliation and bodily anguish from having to hold their urination and to walk several blocks to the nearest restroom;

   b. Second, the protest had to be ended due to sanitation and health concerns, stemming from the lack of access to the restrooms inside of the Sheriff's Office;

   c. Third, there is no evidence that when the Plaintiffs attempted to enter the Sheriff's Office, that they were actually in the "mode of protesting" at that very moment when they sought to enter the building; and,

   d. Fourth, **the Plaintiffs were not "protestors" at the very moment when the G4S Security Officer blocked them from trying to enter the building, but they were, instead civilians just like all the other citizens who were freely entering and exiting the Sheriff's Office.**

37. The said custom, policy and practice of "not allowing protesters" was wrongfully applied to the Plaintiffs who were at that very moment when they were seeking entrance, non-protesters.

38. At the very moment when the G4S security officer denied them access to the restroom inside of the Polk County Courthouse, the Plaintiffs were "civilians" just like all of the other

civilians where were freely entering and exiting the Polk County Courthouse.

    a.    Plaintiffs were wearing regular civilian clothing;

    b.    Plaintiffs were carrying themselves in a professional manner;

    c.    Plaintiffs were not carrying any protest signs;

    d.    Plaintiffs were not yelling, screaming, or singing "protest" slogans;

    e.    Plaintiff were not violent, boisterous, or unruly.

39.    There is no factual basis for the G4S security officer to have denied access to the building's public restrooms or for any other reasons. The Plaintiffs were "civilians" and not "protestors."

40.    Therefore, the G4S security officer and Polk County Deputy Sheriff utilized a "custom, practice or policy" of the Polk County Courthouse in order to deprive the Plaintiffs of the equal protection of the law.

    a.    Other civilians, who were not involved in the above-referenced protest against police brutality, racial profiling, and unscrupulous police practices were allowed to enter and exit the Polk County Courthouse freely.

    b.    However, the Plaintiffs, who were also "civilians not engaged in protesting", were not allowed free access to enter and exit the said Polk County Courthouse building.

41.    WHEREFORE, the Plaintiffs demand:

    A.    Trial by Jury.

    B.    Judgment against the Defendants for attorney's compensatory and punitive damages.

    C.    Affirmative Action, as deemed appropriate by the Court.

D. Injunctive Relief on behalf the Plaintiffs and on behalf on an entire class of persons who express their First Amendment Rights, as deemed appropriate by the Court.

E. Attorney's fees and costs.

F. For whatever additional relief as is deemed just and appropriate by this honorable Court.

### COUNT IV: State Tort Action; Florida Statute 768.28

42. The Plaintiff hereby re-alleges and re-states averments 1 through 25, which should be read as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P.

43. On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson, Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida. And while doing so, they exercised a series of rights under the First Amendment, U.S. Constitution:

    a. The right to petition the state or local government for the redress of grievances;

    b. The right and freedom of assembly;

    c. The right and freedom of speech; and,

    d. The right to conscience and the freedom of religion.

44. On the same date, the Plaintiffs were informed by Defendant G4S that Defendant Sheriff's Office, Polk County Courthouse, and Polk County operated a **law, custom, policy and practice of not allowing "protesters" to enter the building**.

45. The said custom, policy and practice of not allowing protesters to enter the Sheriff's Office curtailed, chilled, limited and restricted the Plaintiff's First Amendment freedom to protest.

a. First off, the Plaintiffs themselves experienced humiliation and bodily anguish from having to hold their urination and to walk several blocks to the nearest restroom;

b. Second, the protest had to be ended due to sanitation and health concerns, stemming from the lack of access to the restrooms inside of the Sheriff's Office;

c. Third, there is no evidence that when the Plaintiffs attempted to enter the Sheriff's Office, that they were actually in the "mode of protesting" at that very moment when they sought to enter the building; and,

d. Fourth, **the Plaintiffs were not "protestors" at the very moment when the G4S Security Officer blocked them from trying to enter the building, but they were, instead civilians just like all the other citizens who were freely entering and exiting the Sheriff's Office.**

46. The said custom, policy and practice of "not allowing protesters" was wrongfully applied to the Plaintiffs who were at that very moment when they were seeking entrance, non-protesters.

47. At the very moment when the G4S security officer denied them access to the restroom inside of the Polk County Courthouse, the Plaintiffs were "civilians" just like all of the other civilians where were freely entering and exiting the Polk County Courthouse.

a. Plaintiffs were wearing regular civilian clothing;

b. Plaintiffs were carrying themselves in a professional manner;

c. Plaintiffs were not carrying any protest signs;

d. Plaintiffs were not yelling, screaming, or singing "protest" slogans;

e. Plaintiff were not violent, boisterous, or unruly.

48. There is no factual basis for the G4S security officer to have denied access to the

13

building's public restrooms or for any other reasons. The Plaintiffs were "civilians" and not "protestors."

49. Therefore, the G4S security officer and Polk County Deputy Sheriff utilized a "custom, practice or policy" of the Polk County Courthouse in order to deprive the Plaintiffs of the equal protection of the law.

    a. Other civilians, who were not involved in the above-referenced protest against police brutality, racial profiling, and unscrupulous police practices were allowed to enter and exit the Polk County Courthouse freely.

    b. However, the Plaintiffs, who were also "civilians not engaged in protesting", were not allowed free access to enter and exit the said Polk County Courthouse building.

50. WHEREFORE, the Plaintiffs demand:

    A. Trial by Jury.

    B. Judgment against the Defendants for attorney's compensatory and punitive damages.

    C. Affirmative Action, as deemed appropriate by the Court.

    D. Injunctive Relief on behalf the Plaintiffs and on behalf on an entire class of persons who express their First Amendment Rights, as deemed appropriate by the Court.

    E. Attorney's fees and costs.

    F. For whatever additional relief as is deemed just and appropriate by this honorable Court.

RESPECTFULLY SUBMITTED:

　　/s/ Roderick O. Ford_____
Roderick O. Ford, Esq.
FBN: 0072620
POOR & MINORITY JUSTICE ASSOCIATON—
LEGAL DEFENSE FUND, INC.
400 N. Ashley Drive
Suite 1900
Tampa, Florida 33602
(813) 223-1200
(800) 792-2241 facsimile
laboradvocate@fordlawfirm.org