# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

POOR AND MINORITY
JUSTICE ASSOCIATION; CLAYTON
COWART; MALIK GIBSON; and
TYRIAN HERRING,

    Plaintiffs,

v.                                           Case No. 8:19-cv-2889-T-02TGW

CHIEF JUDGE, THE TENTH JUDICIAL
CIRCUIT OF THE STATE OF
FLORIDA; POLK COUNTY SHERIFF'S
OFFICE; and G4S SECURE SOLUTIONS
(USA), INC., ET AL,

    Defendants.
_____/

## **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

This cause comes before the Court on Defendants' respective Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), Docs. 18, 19, 20, Plaintiffs' Second Amended Complaint ("SAC") found at Doc. 17. Plaintiffs responded. Doc. 22. Having considered the parties' submissions and the applicable authorities, the Court grants Defendants' Motions without prejudice.

## **BACKGROUND**

Plaintiffs assert claims under 42 U.S.C. § 1983, alleging violations of their First and Fourteenth Amendment rights. In a previous order dismissing the First

Amended Complaint ("FAC"), the Court recounted Plaintiffs' allegations in detail and directed Plaintiffs to correct several flaws in their pleading. Doc. 14. The underlying factual allegations remain largely the same. The Poor and Minority Justice Association ("PMJA") organized a peaceful protest in front of the Polk County Courthouse to bring general attention to racial profiling and police brutality and specifically to protest the recent police shooting of a seventeen-year-old African American man named Mike Taylor. Doc. 17 at 9. Fifty members of the PMJA participated. *Id.*

During the protest, Plaintiff Clayton Cowart (president of the PMJA) and Plaintiffs Malik Gibson and Tyrian Herring (PMJA members) sought to enter the courthouse to use the restroom. *Id.* at 10. The courthouse was open at that time. *Id.* When Plaintiffs tried to pass through the court's security scanners, a G4S security contractor and a Polk County Deputy Sheriff denied them entry per a policy put in place by the Chief Judge of the Tenth Judicial Circuit prohibiting protestors from entering the Polk County Courthouse to use the restrooms.[1] *Id.* at 10–12.

The SAC consists of five Counts, all brought under § 1983. Counts I and II assert claims for First Amendment retaliation against the Polk County Sheriff in

---

[1] The FAC did not allege the existence of such a policy. It alleged that G4S personnel and the deputies denied Plaintiffs admission to the courthouse on their own accord. In dismissing the FAC, this Court pointed out that Plaintiffs had not alleged the existence of a policy or custom as necessary to support the Chief Judge's liability under § 1983, *see* Doc. 14 at 9 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)), and instructed Plaintiffs to address this issue in any amended pleading.

his official capacity and G4S in its corporate capacity, respectively. Doc. 17 at 11–17. Counts III and IV allege Fourteenth Amendment equal protection violations against the Sheriff and G4S, respectively. *Id.* at 17–23. In these Counts, Plaintiffs assert that in being denied access to the restrooms based on their status as former protestors they were treated less favorably than other similarly situated members of the public. *See id.* Counts I–IV seek damages, attorney's fees, and injunctive relief. *Id.* at 14, 17, 19, 20, 22. Count V seeks only injunctive relief against the Chief Judge of the Tenth Judicial Circuit for her implementation of the policy barring all protestors from entering the courthouse. *Id.* at 23–27.

Defendants move to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6). Docs. 18, 19, 20.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts sufficient to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the motion, the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

# **DISCUSSION**

In the order dismissing the FAC, the Court identified a host of flaws to be corrected in any later pleading. *See* Doc. 14. Plaintiffs heeded some of the Court's admonitions, failed to remedy others, and have made additional errors. In short, the SAC, like its predecessor, is due to be dismissed.

    I.    <u>Plaintiffs have not pled a valid theory of liability for their § 1983 claims against Defendants G4S and Sheriff Judd.</u>

For Plaintiffs to state a cognizable claim under § 1983, they must allege the violation of a right guaranteed by the Constitution and the laws of the United States and must show that the alleged violation was perpetrated by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In addition, the Plaintiffs must establish a "direct causal link" between an intentional action of a defendant and the alleged deprivation of constitutional rights. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997).

There are three theories of liability recognized under § 1983: individual, supervisory, and municipal. Individual liability is intuitive. A defendant may be liable if he or she personally participated in the action that caused the constitutional harm. *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976).[2]

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Supervisory liability may attach when a defendant either "personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)). Supervisory liability allows for a defendant to be held liable even if he or she is not present at the scene of the deprivation if the supervisor was indifferent to a history of widespread abuse and the need to correct an alleged deprivation, or the "facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007).

Finally, municipal or government liability allows for a governmental entity to be held liable under § 1983 when its official policy or custom caused the alleged harm. *Monell*, 436 U.S. at 690–95. The custom or policy need not be officially adopted or promulgated. Liability may attach if the use of the policy/custom is otherwise widespread and pervasive within the entity. *See Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). Section 1983, however, does not allow for a supervisor or government entity to be held vicariously liable for the constitutional violations of its employees or agents based solely on the existence of a respondeat superior relationship. *Monell*, 436 U.S. at 691.

As to Defendants G4S and Sheriff Judd, Plaintiffs have alleged no facts that establish a basis for § 1983 liability under any recognized theory. As for Sheriff Judd, the SAC does not allege that he was present when Plaintiffs were denied entry to the courthouse. Nor does it allege that he directed his deputies in his supervisory capacity to refuse the Plaintiffs or that he established a policy to ban protestors from the courthouse—the policy was allegedly set forth by the Chief Judge. Doc. 17 at 10–12. As for G4S, it is being sued in its corporate capacity. So the only theory under which it may be held liable is the municipal theory. *See Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 879 (11th Cir. 2016) (holding private corporation may be held liable under § 1983 if the constitutional violation resulted from the corporation's custom or policy). Again, the SAC attributes the "no protestors" policy to the Chief Judge, not to G4S or any of its corporate officers.

The Counts against Sheriff Judd and G4S instead allege prototypical claims for vicarious liability. Indeed, the only link between either Defendant and the Plaintiffs' alleged constitutional injuries is that the court security personnel who denied the Plaintiffs entry to the courthouse were the employees/agents of the Sheriff and G4S. This is plain assertion of respondeat superior liability, which § 1983 does not allow. As a result, the claims against these Defendants must be dismissed. If Plaintiffs wish to maintain Sheriff Judd and G4S as Defendants in

6

this suit, any amended complaint must allege facts sufficient to support a recognized theory of liability against them.

> II. Counts I and II do not state a claim for First Amendment retaliation or deprivation.

The lack of a viable liability theory aside, Counts I and II fail to allege a First Amendment injury. Both Counts assert claims for First Amendment retaliation against the Sheriff and G4S, respectively. The SAC has rebranded the deprivation claim asserted in the FAC as a First Amendment retaliation claim, but the factual underpinnings for the claim remain largely the same. In essence, Counts I and II of the SAC posit a hybrid deprivation-retaliation claim. Plaintiffs do not state a viable claim under either a retaliation or deprivation theory.

A *prima facie* claim for First Amendment retaliation requires Plaintiffs to allege that "(1) [they] engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). A defendant "adversely affects protected speech if [the] alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 481 (citations omitted). Whether a plaintiff has suffered such an effect is judged under an objective standard. *Bennett v. Hendrix*, 423 F.3d 1247, 1250–53 (11th Cir. 2005).

7

Plaintiffs were denied access to the courthouse restrooms according to the "no protestor" policy, which Plaintiffs claim forced them and other members of PMJA to abandon their protest outside the courthouse because of sanitation and health concerns. Doc. 17 at 12. As a result, Plaintiffs maintain the lack of restroom access "curtailed, chilled, limited and restricted [their] First Amendment freedom to protest, speak, or to petition the government to redress their grievances." *Id.*

There is no question the Plaintiffs satisfy the first element required for a *prima facie* retaliation claim. Airing grievances against the government in a public protest is quintessential constitutionally protected speech. *United States v. Grace*, 461 U.S. 171, 176 (1983) ("There is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment."). It is the second element that spells trouble for Plaintiffs. It is simply not plausible that the denial of access to the courthouse restrooms was the type of action that would deter a reasonable person from continuing to exercise his or her First Amendment rights. As Plaintiffs acknowledge, there are public restrooms one to two blocks from the courthouse, Doc. 17 at 10, not an unreasonable walking distance by any stretch. And as the Court stated in its previous order, Plaintiffs would have had a much easier time using these restrooms. They would not have needed to go through a rigorous security screening to use them. Given the availability of public restrooms, Plaintiffs' contention that

8

the lack of access to the court's restrooms was intended to end their protest or had such an effect is implausible.

Plaintiffs also suggest they were deprived their First Amendment right to enter the courthouse, a right enjoyed even by non-litigants, whether to observe court proceedings or to engage in another form of free expression. Doc. 17 at 12. They claim when seeking to enter the court, they were not in the "mode of protesting" and were denied entry, without a compelling reason, simply because they had been protesting moments before. *Id.* This claim too is legally insufficient.

First, the denial of Plaintiffs' entry to the courthouse did not implicate their First Amendment rights. When Plaintiffs sought to clear court security, they did so for the express purpose of using the court's restrooms. Use of a court restroom is not expressive conduct protected under the First Amendment. *United States v. Gilbert*, 920 F.2d 878, 883, 885 (11th Cir. 1991).

To the extent that Plaintiffs, even as non-litigants, have a constitutional right to attend open court proceedings, *see* Doc. 17 at 5, 12, 15 (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (holding citizens have First Amendment right to attend criminal trials)), Plaintiffs admit they were not seeking to enter the courthouse for such a purpose but only to use the court restrooms. Doc 17 at 10. Plaintiffs have failed to state a viable First Amendment claim in Counts I and II.

9

### III.    Counts III and IV fail to allege an equal protection violation.

Plaintiffs also assert they were denied equal protection under the law. They claim that when they entered the courthouse they did so as "non-protestors" and were denied entry, while other similarly situated "non-protesting" members of the public were allowed to enter the courthouse. *See* Doc. 17 at 17–23.

An equal protection claim requires the Plaintiffs to show they were intentionally treated differently from others who were "similarly situated" and that there was no legitimate basis for the difference in treatment. *See Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1201 (11th Cir. 2007). To be "similarly situated," the comparators "must be *prima facie identical in all relevant respects*." *Id.* at 1204 (quoting *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006). In analyzing the basis for the difference in treatment, the level of scrutiny applied rests on the nature of the classification. If the differential treatment is not based on a protected classification, such as race, it will be upheld against an equal protection challenge "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). The burden falls on the plaintiff to demonstrate that no conceivable basis exists to support the classification. *Resendiz-Alcaraz v. U.S. Atty. Gen.*, 383 F.3d 1262, 1271–72 (11th Cir. 2004).

Plaintiffs' claim fails from the outset because they have not pled facts to suggest that similarly situated persons received preferential treatment. While Plaintiffs have alleged that other non-protestors were allowed to enter the courthouse, they have not alleged that these other non-protestors were admitted solely to use the restrooms and otherwise had no business before the court. Indeed, the SAC provides no details about these other civilian non-protestors or their purposes for entering the court. It is unclear if they were ordinary citizens, court employees, or litigants. In failing to specify the details of the other non-protestors' activities, Plaintiffs have failed to show they were proper comparators.

Even if the Court were to assume Plaintiffs were subjected to disparate treatment, their exclusion from the interior of the courthouse did not violate the Equal Protection Clause. Plaintiffs assert they were barred from using the court's restrooms according to the "no protestors" policy set forth by the Chief Judge. "Protestor" is not a protected class. Thus, a ban on allowing protestors to use court facilities is valid so long as it promotes a legitimate government interest, which the ban here does. The primary function of a courthouse is to facilitate the "smooth operation of a government's judicial functions." *Huminski v. Corsones*, 396 F.3d 53, 91 (2d Cir. 2005). A policy banning protestors furthers this function. The government need not admit protestors and wait for them to cause a disruption, only then to remove them. *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473

11

U.S. 788, 810 (1985) ("[T]he Government need not wait until havoc is wreaked to restrict access to a nonpublic forum."). Similar policies have been upheld as reasonable. *See, e.g.*, *Braun v. Terry*, 148 F. Supp. 3d 793, 799 (E.D. Wis. 2015) (upholding policy barring pro- and anti-same-sex marriage protestors from entering courthouse, finding policy reasonably promoted the court's smooth operation); *see also Cornelius*, 473 U.S. at 811 ("The First Amendment does not forbid a viewpoint-neutral exclusion of speakers who would disrupt a nonpublic forum and hinder its effectiveness for its intended purpose.").

While Plaintiffs' primary contention is that they were denied entry because of their protestor status, they also suggest their exclusion re-subjected them "to a form of 'Jim Crow' racial segregation." Doc. 17 at 11. However, Plaintiffs state the policy applied to them was a ban on all protestors. Doc. 17 at 10. Plaintiffs likewise do not state a single fact to support a theory that they were not allowed to use the restroom because they are African American, while other white individuals were allowed to do so. The Court will not credit this conclusory suggestion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682–83 (2009).

IV. <u>Plaintiffs fail to allege future harm requiring injunctive relief.</u>

Plaintiffs seek injunctive relief against the Sheriff and G4S in Counts I–IV and against the Chief Judge in Count V for her policy barring protestors from the courthouse. Doc. 17 at 14, 17, 19, 20, 22. As the Court expressed in its previous

order, injunctive relief is a forward-looking remedy, seeking to prevent a likely future harm. Doc. 14 at 6–7. Article III requires a showing that the threatened future injury is likely enough that it poses an imminent threat, not merely a conjectural or hypothetical one. *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1161 (11th Cir. 2008). Where the imminence of future harm is based on a past injury, the plaintiff must "allege[] with particularity that a future injury would likely occur in substantially the same manner as the previous injury." *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006).

Plaintiffs have failed to make the required showing. First, Plaintiffs have not alleged that they have suffered any constitutional injury here. Second, as for a future injury, the protest here was a "one off" incident organized in response to a discrete event—the police shooting of Mike Taylor. The SAC states that the PMJA will "engage in a follow-up protest in the near future," and, because it is a civil rights organization, it "will likely engage in future protests at the Polk County Courthouse." Doc. 17 at 24. Yet the SAC provides no specific date, or even a date range, for when any future protest will occur. The Eleventh Circuit has rejected this type of nebulous claim as too conjectural or hypothetical to satisfy Article III's requirements. *See, e.g.*, *Elend*, 471 F.3d at 1209 (holding plaintiffs' avowed intention to protest in similar manner at unspecified location and time did not allege Article III injury); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555,

13

564 (1992) ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Accordingly, the claims for injunctive relief are dismissed.

## CONCLUSION

The Court **GRANTS** Defendants' Motions to Dismiss, Docs. 18, 19, 20, without prejudice. If Plaintiffs choose to file an amended pleading, they must address the specific flaws the Court has highlighted. Should Plaintiffs be unable to replead their claims within fourteen days, this matter will be closed.

**DONE AND ORDERED** at Tampa, Florida, on September 14, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record