# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**POOR AND MINORITY**
**JUSTICE ASSOCIATION, INC.;**
**DR. CLAYTON COWART;**
**MALIK GIBSON; and TYRIAN HERRING.**

       Plaintiffs,

                                    CASE NO: 8:19-CV-T-2889-2TGW

Vs                                    **INJUNCTIVE RELIEF**
                                    **42 U.S.C. § 1983**

**THE CHIEF JUDGE, TENTH JUDICIAL CIRCUIT**
**COURT (THE STATE OF FLORIDA); GRADY JUDD,**
**SHERIFF OF THE POLK COUNTY, in his official capacity;**
**and G4S SECURE SOLUTIONS USA, et al.**

       Defendant(s).
_____/

## FOURTH AMENDED COMPLAINT

      COMES NOW, the Plaintiffs, Poor and Minority Justice Association, Inc. ("PMJA"); Dr.

Clayton Cowart ("Cowart"); Malik Gibson ("Gibson"), Tyrian Herring ("Herring"); and an entire

class of unnamed grievants, who have been affected by the wrongful conduct averred in this action,

by and through their undersigned legal counsel, and file this original complaint against CHIEF

JUDGE, THE TENTH JUDICIAL CIRCUIT (STATE OF FLORIDA); GRADY JUDD,

SHERIFF OF THE POLK COUNTY SHERIFF'S OFFICE ("Judd" or "Sheriff's Office"), in his

official capacity; and G4S SECURE SOLUTIONS USA ("G4S"). The amendments set forth in

this FOURTH Amended Complaint have been averred in **bold font**, and are hereby interposed

1

pursuant to Rule 11(b)(2) of the Federal Rules of Civil Procedure.[1]

### A. Jurisdictional Statement

**1.**     The U.S. District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and pendent state-law tort action pursuant to Fla. Stat. 768.28.

### FOURTH AMENDMENT (U. S. Constitution)

**2.**     **That this lawsuit presents a legal claim alleging an "unreasonable search and seizure" pursuant to § 1983 and the Fourth Amendment, U.S. Constitution that is of <u>first impression</u> in the U.S. District Court, Middle District of Florida and in the U.S. Court of Appeals for the Eleventh Circuit.**

         a.     The Fourth Amendment, U.S. Constitution, states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

         b.     *Katz v. United States* **offered a two-part test to elaborate upon this protection: people are protected by the Fourth Amendment when they "have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'"[2]**

         c.     **This Fourth Amended Complaint is based upon a claim that the Plaintiffs had**

---

[1] The Fourth Amended Complaint "withdraws" the Third Amended Complaint, pursuant to Rule 11(c)(2) of the Fed. R. Civ.P. and is hereby filed pursuant to  Rule 11(b)(2) states that the Pleader may present "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

[2] *Katz v. United States*, 389 U.S. 347, 361 (1967).

a reasonable expectation of privacy protected under the Fourth Amendment, U.S. Constitution, which the Defendants violated.

### THIRTEENTH AMENDMENT (U. S. Constitution)

3.      This lawsuit also presents a legal claim under the Thirteenth Amendment, U.S. Constitution that is of <u>first impression</u> in the U.S. District Court, Middle District of Florida and in the U.S. Court of Appeals for the Eleventh Circuit.

      a.      Therefore, this lawsuit fundamentally arises under Amendment XIII, U.S. Constitution ("Slavery"/"Involuntary Servitude"). 42 U.S.C. §§ 1981, 1983 were enacted pursuant to the 13th Amendment U.S. Constitution. See, e.g., *Abner v. The Kansas City Southern Railroad*, 513 F.3d 154 (5th Cir. 2008)("§1981 and Title VII more generally arise from the powers granted to Congress by the Thirteenth Amendment and embody its principles…. " *Id*. At 158). Hence, the Plaintiff's Fourth Amended Complaint is filed pursuant to the Thirteenth Amendment, U.S Constitution, and thus incorporates the full panoply Thirteenth Amendment that constitutes "badges or incidents" of slavery.

      b.      For a definition "badges and incidents" of slavery, see See, e.g., *Civil Rights Cases*, 109 U.S. 3, 20-22 (1883):

> It is true that slavery cannot exist without law any more than property in lands and goods can exist without law, and therefore the thirteenth amendment may be regarded as nullifying all state laws which establish or uphold slavery….. The long existence of African slavery in this country gave us very distinct notions of what it was, and what were its necessary incidents. Compulsory service of the slave for the benefit of the master, restraint of his movements except by the master's will, disability to hold property, to make contracts, to have a standing in court, to be a witness against a white person, and such like burdens and incapacities were the inseparable incidents of the institution. Severer punishments for crimes were imposed on the slave than on free persons

guilty of the same offenses. Congress, as we have seen, by the civil rights bill of 1866, passed in view of the thirteenth amendment, before the fourteenth was adopted, undertook to wipe out these burdens and disabilities, the necessary incidents of slavery, constituting its substance and visible from; and to secure to all citizens of every race and color, and without regard to previous servitude, those fundamental rights which are the essence of civil freedom, namely, the same right to make and enforce contracts, to sue, be parties, give evidence, and to inherit, purchase, lease, sell, and convey property, as is enjoyed by white citizens. Whether this legislation was fully authorized by the thirteenth amendment alone, without the support which it afterwards received from the fourteenth amendment, after the adoption of which it was re-enacted with some additions, it is not necessary to inquire.

c.    For another definition of "badge or incident of slavery," see *Jones v. Alfred H. Mayer Co*., 392 U.S. 409, 445-447 (1968):

The true curse of slavery is not what it did to the black man, but what it has done to the white man. For the existence of the institution produced the notion that the white man was of superior character, intelligence, and morality. The blacks were little more than livestock -- to be fed and fattened for the economic benefits they could bestow through their labors, and to be subjected to authority, often with cruelty, to make clear who was master and who slave.

Some badges of slavery remain today. While the institution has been outlawed, it has remained in the minds and hearts of many white men. Cases which have come to this Court depict a spectacle of slavery unwilling to die. We have seen contrivances by States designed to thwart Negro voting, *e.g., Lane v. Wilson,* 307 U.S. 268. Negroes have been excluded over and again from juries solely on account of their race, *e.g., Strauder v. West Virginia,* 100 U.S. 303, or have been forced to sit in segregated seats in courtrooms, *Johnson v. Virginia,* 373 U.S. 61. They have been made to attend segregated and inferior schools, *e.g., Brown v. Board of Education,* 347 U.S. 483, or been denied entrance to colleges or graduate schools because of their color, *e.g., Pennsylvania v. Board of Trusts,* 353 U.S. 230; *Sweatt v. Painter,* 339 U.S. 629. Negroes have been prosecuted for marrying whites, *e.g., Loving v. Virginia,* 388 U.S. 1. They have been forced to live in segregated residential districts, *Buchanan v. Warley,* 245 U.S. 60, and residents of white neighborhoods have denied them entrance, *e.g., Shelley v. Kraemer,* 334 U.S. 1. Negroes have been forced to use segregated facilities in going about their daily lives, having been excluded from railway coaches, *Plessy v. Ferguson,* 163 U.S. 537; public parks, *New Orleans Park Improvement Assn. v. Detiege,* 358 U.S. 54; restaurants, *Lombard v. Louisiana,* 373 U.S. 267; public beaches, *Mayor of Baltimore v. Dawson,* 350 U.S. 877; municipal golf courses, *Holmes v. City of Atlanta,* 350 U.S. 879; amusement parks, *Griffin v. Maryland,* 378 U.S. 130; buses, *Gayle v. Browder,* 352 U.S. 903;

public libraries, *Brown v. Louisiana,* 383 U.S. 131. A state court judge in Alabama convicted a Negro woman of contempt of court because she refused to answer him when he addressed her as "Mary," although she had made the simple request to be called "Miss Hamilton." *Hamilton v. Alabama,* 376 U.S. 650.

That brief sampling of discriminatory practices, many of which continue today, stands almost as an annotation to what Frederick Douglass (1817-1895) wrote nearly a century earlier:

"Of all the races and varieties of men which have suffered from this feeling, the colored people of this country have endured most. They can resort to no disguises which will enable them to escape its deadly aim. They carry in front the evidence which marks them for persecution. They stand at the extreme point of difference from the Caucasian race, and their African origin can be instantly recognized, though they may be several removes from the typical African race. They may remonstrate like Shylock --"

"Hath not a Jew eyes? hath not a Jew hands, organs, dimensions, senses, affections, passions? fed with the same food, hurt with the same weapons, subject to the same diseases, healed by the same means, warmed and cooled by the same summer and winter, as a Christian is?"

"-- but such eloquence is unavailing. They are Negroes -- and that is enough, in the eye of this unreasoning prejudice, to justify indignity and violence. In nearly every department of American life, they are confronted by this insidious influence. It fills the air. It meets them at the workshop and factory, when they apply for work. It meets them at the church, at the hotel, at the ballot box, and, worst of all, it meets them in the jury box. Without crime or offense against law or gospel, the colored man is the Jean Valjean of American society. He has escaped from the galleys, and hence all presumptions are against him. The workshop denies him work, and the inn denies him shelter; the ballot box a fair vote, and the jury box a fair trial. He has ceased to be the slave of an individual, but has, in some sense, become the slave of society. He may not now be bought and sold like a beast in the market, but he is the trammeled victim of a prejudice, well calculated to repress his manly ambition, paralyze his energies, and make him a dejected and spiritless man, if not a sullen enemy to society, fit to prey upon life and property and to make trouble generally."

Today the black is protected by a host of civil rights laws. But the forces of discrimination are still strong.

5

      **d.**     There is a legal definition of the tort of "invasion of privacy" [3] which is rooted in Thirteenth Amendment Jurisprudence. See, e.g., Mary Anne Franks, "Democratic Surveillance," *Harvard Journal of Law & Technology*, Volume 30, Number 2 (Spring 2017), pp. 441, 443:

> The institution of slavery imposed wide-ranging and diverse harms that can be understood in many ways, from physical cruelty to entrenchment of racism to economic appropriation. Slavery is less often described in terms of its destructive effects on human privacy, [4] but the description is no less true for that. Beyond obvious brutality and dehumanization, slavery entailed the routine inspection and exposure of black bodies. The bodies of slaves were constantly monitored through investigations of their fitness for work, the sexual assault of female slaves, and beatings of both male and female slaves. Families were routinely split up, denying enslaved individuals the freedom of intimate association and ability to care for their children — freedoms later recognized in American jurisprudence as essential to the concept of privacy[5]….
>
> Today, the black population is subject to extensive, literal, daily policing in many cities across the United States. From disproportionate uses of force in police encounters to frequent stops and frisks, black bodies are under constant suspicion and scrutiny. This extends beyond state actors to private citizens, from "subway vigilantes" like Bernhard Goetz, who shot four unarmed young black men after they demanded five dollars, to "neighborhood watchmen" like George Zimmerman, who stalked and ultimately killed a young, black, unarmed teenager named Trayvon Martin. Young black men and women are taught that their bodies are considered threats in themselves, and that because of this they can expect to be followed, investigated, questioned, and evaluated wherever they go.

---

[3]   Mary Anne Franks, "Democratic Surveillance," *Harvard Journal of Law & Technology*, Volume 30, Number 2 (Spring 2017), p. 432 ("In their famous 1890 essay, *The Right to Privacy*, Samuel Warren and Louis Brandeis wrote that the right to privacy was not to be understood as a mere property right, but as something even more foundational: the right to human personality itself. The right to privacy is part of the fundamental right 'to be let alone' and is similar to 'the right not to be assaulted or beaten, the right not to be imprisoned, the right not to be maliciously prosecuted, [and] the right not to be defamed.' According to Warren and Brandeis, the right to privacy should not be confused with a property right, but is based on an even more foundational and absolute principle: 'that of an inviolate personality.'" Citing, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 HARV. L. REV. 193, 196–97 (1890).

[4]  See, generally, Deckle McLean, *Privacy and Its Invasions* (published November 6, 1995).

[5]  See *Eisenstadt v. Baird*, 405 U.S. 438, 452–53 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923)

## FIRST AMENDMENT (U. S. Constitution)

4.      That the federal question involved in this case also arises under 42 U.S.C. § 1983

Deprivation Constitutional Civil Rights Under Color of State Law, to wit: the reliance upon an

official "policy, rule, custom, usage, or law" to deprive the said Plaintiffs of rights pursuant to the

"Freedom of Speech, "Right of Peaceable Assembly" and "Right to Petition the Government"

clauses of the First Amendment, U.S. Constitution.

      a.      The First Amendment, U.S. Constitution, states: "Congress shall make no law

respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the

freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition

the Government for a redress of grievances."

      b.      42 U.S.C. § 1983, "Civil action for deprivation of rights" states:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress, except that in any action brought
> against a judicial officer for an act or omission taken in such officer's judicial
> capacity, injunctive relief shall not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable. For the purposes of this section, any
> Act of Congress applicable exclusively to the District of Columbia shall be
> considered to be a statute of the District of Columbia.

5.      The prima facie case standard relied upon, with respect to the plaintiffs respective First

Amendment claims against the defendants, arising under 42 U.S.C. § 1983, is based upon the

United States Supreme Court's "overbroad" and "chilling effect" holdings in *Thornhill v.

Alabama*, 310 U.S. 88 (1940); *Gooding v. Wilson*, 405 U.S. 518 (1972); *Watchtower Bible &*

*Tract Soc. of N. Y., Inc. v. Village of Stratton*, 536 U.S. 150 (2002); *United States v. Stevens*, 559 U.S. 460 (2010); *McCullen v. Coakley*, 573 U.S. 464 (2014); and *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).[6]

6.      The prima facie case standards regarding the First Amendment claims, arising under 42 U.S.C. § 1983, are likewise premised upon the fact that the Defendant Chief Judge of the Tenth Judicial Circuit (State of Florida) had and enforced on the date(s) relevant to the allegations in this complaint, a "statute, ordinance, regulation, custom, or usage" barring all First Amendment protesters from entering the Polk County courthouse building in Bartow, Florida and using the restrooms within that building, and that this official policy is "overbroad in scope" and has a "chilling effect" upon the Plaintiffs' constitutional rights.[7]

       a.      The evidence of the said "statute, ordinance, regulation, custom, or usage" barring all First Amendment protesters will be presented in the form of:

              (1).      Documents of policies and court rules;

              (2).      Video of the tortuous conduct on the date when the Plaintiffs were denied access to the courthouse restrooms.

7.      The prima facie case standards regarding the First Amendment, arising under 42 U.S.C. § 1983, are likewise premised upon the fact that the

"tortuous" nature of the harm caused by denial of restrooms can be articulated in various sources

---

[6] *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)("To set out a § 1983 First Amendment retaliation claim, a plaintiff must plead that (1) he engaged in an activity protected by the First Amendment; (2) the government took significant adverse action against him (that is, the government inflicted an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity); and (3) the plaintiff's constitutionally protected conduct was a substantial factor—that is, a motivating factor—in the government's decision to take adverse action against the plaintiff.")

[7] *Thornhill v. Alabama*, 310 U.S. 88 (1940); *Gooding v. Wilson*, 405 U.S. 518 (1972); *Watchtower Bible & Tract Soc. of N. Y., Inc. v. Village of Stratton*, 536 U.S. 150 (2002); *United States v. Stevens*, 559 U.S. 460 (2010); *McCullen v. Coakley*, 573 U.S. 464 (2014).

of other state and federal laws:

      a.      <u>Criminal Law/ Eighth Amendment, U.S. Constitution</u>: depriving the use of

restrooms to inmates may constitute "cruel and unusual punishment."

      b.      <u>State/ Federal Workers' Compensation Laws</u>: bladder infections or other injury

caused through lack of access to restrooms may be grounds for a valid workers' compensation

claim.

      c.      <u>Federal Occupational Safety and Health Act/ Administration</u>: bladder infections

caused through frequent lack of access to restrooms may be grounds for a valid workers'

compensation claim.[8]

      d.      <u>Medial Testimony from a Medical Doctor/ Physician</u>: a medical doctor will testify

regarding the reasonableness of the Plaintiffs' position that, *given the totality of the circumstances*,

they should not have been reasonably expected to utilize any other restrooms at the Bartow

Courthouse (a) when, as newcomers to the area, they were reasonably unaware of any other nearby

public restrooms; (b) there were no visible "public restroom" signs in the area or general vicinity;

(c) no other nearby restrooms in the general vicinity were visibly present; (d) the state or local-

---

[8] "The **Occupational Safety and Health Administration (OSHA)** requires employers to provide all workers — including transgender employees — with prompt access to a clean restroom. Additional requirements related to restroom facilities and bathroom break policies are outlined in OSHA's sanitation standards (29 CFR 1910.141, 29 CFR 1926.51 and 29 CFR 1928.110). These standards aim to protect workers from health complications that can occur when a bathroom is not readily available, such as bladder problems, bowel issues and urinary tract infections. While OSHA sanitation standards offer a basic overview of the key requirements employers must meet, the administration does not recommend any specific restroom policies. Employers should create their own written policies that comply with OSHA's standards. Under **OSHA sanitation standards**, employers must:

- Permit workers to leave their work area to use the restroom as needed
- Provide an acceptable number of restrooms for the current workforce
- Avoid putting unreasonable restrictions on bathroom use
- Ensure that restrictions on restroom use do not cause extended delays

Additional laws, regulations or requirements related to workplace restroom use may apply depending on your state or municipality. Employers must also make sure that their restroom policy does not violate federal antidiscrimination laws."

government officials who turned them away from entering the courthouse did not inform them of any alternative public or private restrooms that were available to them; and, (e) through sheer lack of knowledge of any other nearby restrooms, the Plaintiffs got into their vehicles and drove to nearby restrooms at gas stations, convenience stores, restaurants and the like.

---

8.      The prima facie case standards regarding the First Amendment claims, arising under 42 U.S.C. § 1983, in this lawsuit, are based upon a broad definition of "court business"[9] that encompasses **"the right of the people…to petition the Government for a redress of grievances"** to include the right of Florida citizens (including those who are not directly engaged as party-litigants in pending court business) to attend active and pending court hearings whether inside or outside of state courthouses:

a.      <u>First Amendment Right of Petition</u>: Actual litigants entering the courthouse to attend court business. See, e.g., *NAACP v. Button*, 371 U.S. 415, 443-444 (1963)("Resort to the courts to seek vindication of constitutional rights … fall within the First Amendment's protections….")

b.      <u>First Amendment Right of Petition</u>: Non-litigants who have no court business (i.e., members of the general public) have a statutory or constitutional right to enter the Polk County courthouse to attend the court business of the actual litigants[10]:

(1).      Florida civil trials[11];

---

[9] See, e.g., the **Order Granting the Defendants' Motion to Dismiss (Doc. # 14)(March 27, 2020),** stating "It seems unlikely Plaintiffs can truthfully re-plead that the Polk County Courthouse generally offers restrooms for the public at large who have no court business."
[10] Id.
[11] There is a "strong presumption of openness" for civil trials in Florida. *Barron v. Florida Freedom Newspapers*, 531 So. 2d 113, 118-19 (Fla. 1988). A judge will only hold a closed civil trial in limited circumstances. For example, you may be excluded from the trial to keep trade secrets safe, to protect national security, and to avoid substantial injury to innocent third parties, such as children in a divorce case. Moreover, the trial court will only close the proceedings if

(2).    Florida criminal

trials[12];

(3).    Florida family trials[13]; and,

(4).    Florida juvenile  hearings.[14]

c.    <u>First Amendment Right of Petition</u>: the right of lawyers to assist potential litigants

with engaging in litigation such as filing lawsuits. See, e.g., *NAACP v. Button*, 371 U.S. 415, 440

(1963)("First Amendment rights to enforce constitutional rights through litigation, as a matter of

law, cannot be deemed malicious.")

d.    <u>First Amendment Right of Petition</u>: the right of protestors to engage in "court

business" in the form of exercising a right to petition the government to redress grievances, <u>in</u>

<u>public areas outside of the courthouse</u>. See, e.g., *United States v. Grace*, 461 U.S. 171, 177

(1983)(Public sidewalks forming the perimeter of the Supreme Court grounds are traditional

public forums, just like other public sidewalks, and that a federal statute prohibiting parading,

picketing and similar activity on those sidewalks was unconstitutional.)

e.    <u>First Amendment Right of Petition</u>: the right to petition may not be curtailed with

callous indifference or flagrant disregard to First or Fourteenth Amendment. There must be a

compelling state interest. See, e.g., *NAACP v. Button*, 371 U.S. 415, 439 (1963)("In *NAACP v.*

*Alabama ex rel. Patterson, 357 U.S. 449, 357 U.S. 461*, we said, 'In the domain of these

---

there is no reasonable alternative to closure and the closure is the least restrictive form necessary.

[12] Florida citizens have the same First Amendment right to attend all stages of criminal trials as you do in federal court. See *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580(1980); See also *Miami Herald Publishing Co. v. Lewis*, 426 So. 2d 1, 3 (Fla. 1982). This includes the preliminary hearing and the jury selection process.

[13] Custody and other dependency proceedings are presumptively open, unless the judge determines the public interest or the welfare of the child is best served by closing the hearing. Fla.Stat. 39.508(2). However, adoption proceedings in Florida are closed, Fla.Stat. 63.162, as are proceedings to terminate parental rights, Fla.Stat. 39.809(4).

[14] Juvenile proceedings must be open to the public unless the judge determines the public interest and the welfare of the child are best served by closure. Fla. Stat. 985.035

indispensable liberties, whether of speech, press, or association, the decisions of this Court recognize that abridgment of such rights, even though unintended, may inevitably follow from varied forms of governmental action.' Later, in *Bates v. Little Rock, 361 U.S. 516, 361 U.S. 524*, we said, '[w]here there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling.' Most recently, in *Louisiana ex rel. Gremillion v. NAACP, 366 U.S. 293, 366 U.S. 297*, we reaffirmed this principle: '. . . regulatory measures . . . no matter how sophisticated, cannot be employed in purpose or in effect to stifle, penalize, or curb the exercise of First Amendment rights.'

9.      That the Plaintiff Poor and Minority Justice Association, Inc. (PMJA, Inc.) is an incorporated, non-profit organization within the State of Florida. It is located in Winter Haven, Florida.

  A.   The PMJA, Inc. has constitutional standing in this lawsuit to enforce its interests and to vindicate its rights under the First Amendment, U.S. Constitution. See, e.g., *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 777 (1978).[15]

  B.   The PMJA, Inc., is a non-profit corporate entity that is duly organized under the laws of the state of Florida. Corporations and other types of organizations have long exercised a range of constitutional rights, including those found under the Contracts Clause[16], Due Process Clause,[17]

---

[15] While critics find it objectionable that corporations benefit from a right as "personal" as the First Amendment free speech right, the First Amendment protects "speech" and not persons.   In addition, the First Amendment mentions the "press," which some scholars have argued indicates an understanding of the crucial role that media organizations play in promoting speech. In First Amendment cases, the Court is focused on the marketplace of ideas, which then leads to a broad notion of corporate standing to litigate participation in that marketplace.

[16] *Trs. of Dartmouth Coll. v. Woodward*, 17 U.S. (4 Wheat.) 518, 638-39 (1819) (finding that state law unconstitutionally interfered with an organization's contractual rights).

[17] *Minneapolis & St. Louis Ry. Co. v. Beckwith*, 129 U.S. 26, 28 (1889) (recognizing corporations receive protection for the "enjoyment of property," including the ability to challenge "legislation injuriously affecting it").

Fourteenth Amendment Equal Protection Clause,[18] First Amendment,[19] Fourth Amendment,[20] Fifth Amendment Takings and Double Jeopardy Clauses,[21] Sixth Amendment,[22] and Seventh Amendment.[23]

10.     The Plaintiff Dr. Clayton Cowart is the President of the PMJA, Inc. and a resident of Winter Haven, Polk County, Florida.   He is also the senior pastor of the Church of God the Bible Way, Inc., which is affiliated with the PMJA, Inc.

11.     The Plaintiff Malik Gibson is a member of the PMJA, Inc. and the Church of God the Bible Way, Inc. and he is a resident of the State of Georgia.

12.     The Plaintiff Tyrian Herring is a member of the PMJA, Inc. and the Church of God the Bible Way, Inc., and he is a resident of the State of Georgia.

13.     Plaintiff PMJA, Inc. is a civil rights organization that concentrates its efforts in protesting abusive police practices and other related civil rights violations. The PMJA, Inc.'s membership is almost entirely African American. Plaintiffs Cowart, Gibson, and Herring, are all African American. And the membership of the Church of God the Bible Way, Inc. is almost entirely African American. These regular and recurring activities on the part of the PMJA, Inc., constitutes First Amendment freedoms and liberties, as such: free exercise of religion; freedom of speech; the

---

[18] *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 881 n.9 (1985) (citing the "well established" Equal Protection Clause rights of corporations); *Santa Clara Cnty. v. S. Pac. R.R. Co.*, 118 U.S. 394, 396 (1886) (noting that the Court agreed that the Equal Protection Clause applied to corporations at issue).

[19] *Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 903 (2010)("[T]he First Amendment does not allow political speech restrictions based on a speaker's corporate identity.").

[20] *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 575 (1977) (assuming corporations are protected by Double Jeopardy Clause rights); *Russian Volunteer Fleet v. United States*, 282 U.S. 481, 489 (1931) (discussing the Takings Clause as applied to a foreign corporation).

[21] *S. Union Co. v. United States*, 132 S. Ct. 2344, 2351-52 (2012) (holding that the Sixth Amendment can protect a corporation from criminal fines).

[22] *Ross v. Bernhard*, 396 U.S. 531, 542 (1970) (holding that in a derivative shareholder action, shareholders possess the same right to trial by jury as a corporation).

[23] *Ross v. Bernhard*, 396 U.S. 531, 542 (1970) (holding that in a derivative shareholder action, shareholders possess the same right to trial by jury as a corporation).

right of the people peaceably to assemble; and the right to petition the Government for a redress of grievances.

14.    The Defendants Chief Judge of the 10th Judicial Circuit (State of Florida) and Grady Judd, Sheriff of the Polk County Sheriff's Office operate two separate governmental units which are the subject of this litigation, to wit:

     a.    The Defendant Grady Judd's office (the Polk County Sheriff's Office) is headquartered at 1891 Jim Keene Blvd., Winter Haven, Florida 33880.

     b.    The Defendant, Chief Judge of the 10th Judicial Circuit (State of Florida) operates state court houses that cover Hardee, Highlands, and Polk counties. The Tenth Judicial Circuit Court of Florida is located, among several other places, at the Polk County Courthouse, 255 N. Broadway Avenue, Bartow, Florida 33830.

15.    The Defendant G4S Secure Solution USA is headquartered at 405 N. Reo Street, Suite 150, Tampa, Florida 33609.    G4S is interposed in this lawsuit as § 1983 Defendant and is sued herein within its "personal capacity," as per 42 U.S.C. § 1983, consequent of its involvement in the constitutional torts committed and described hereinbelow.


**STATEMENT OF FACTS**

**Introduction**

16.    On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson, Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida.

     a.    The said peaceful protest occurred within a public forum; and,

     b.    The said protest constituted a form of important "court business" in that it was a

First Amendment petitioning at the Polk County Courthouse, in an effort to redress various grievances that were directed against a court ruling that was issued in that same court.

17.     The said peaceful protest was organized by the PMJA, Inc. There were at least fifty (50) protesters on the scene at the said location mentioned in paragraph 10. Many of the protesters held placards and signs stating: "Hands Up, Don't Shoot!"

18.     The nature of the protest was "racial profiling" and racial discrimination with respect to unscrupulous police practices.    The said protest was designed to bring public attention to police brutality in general and to protest the recent police-shooting of a seventeen year-old African American young man named Mike Taylor. This shooting resulted in the death of Mike Taylor.

19.     The said protest was pre-approved by the local government authorities, and it was also an

entirely peaceful demonstration.

20.     At some point following the commencement of the protest, Plaintiff's Cowart, Gibson, and Herring walked to the Polk County Courthouse to enter into the public area of the building.

      a.     At that time, the said courthouse office building was open to members of the general public.

      b.     Non-protesters (i.e., persons who were not involved in the above-mentioned protest) were allowed to enter and exit the Polk County Courthouse building.

      **c.**     However, when the said Plaintiffs attempted to walk through the security scanner, a G4S Official and a Deputy Sheriff told them: **"... no one involved in the protest would be granted access to the restrooms."**

      d.     After the said G4S Official informed the Plaintiffs that "protesters" could not enter the Polk County Courthouse building, Plaintiff Cowart requested to enter the said building to use the public restroom, and was denied access to the restroom that was inside of the said Polk County Courthouse.

      e.     In addition, Plaintiffs Gibson and Herring would have utilized the said public restroom but was denied access to this public facility because of their status as "protesters."

21.     Plaintiffs were humiliated, significantly inconvenienced, and subjected to bodily anguish and distress stemming from their inability to utilize the public restroom inside of the Polk County Courthouse.

      a.     Plaintiffs were forced to hold their urination and walk more than one or two blocks to the next closest restroom; and,

      b.     The protesters were forced to end the protest, due to health and sanitation concerns,

and lack of access to public restrooms.

22.     The above-mentioned denial the Plaintiff's access to a public accommodation was a

derogation of the Plaintiff's First Amendment constitutional right to free exercise of religion,

freedom speech, and to petition the government to redress grievances and, essentially, re-subjected

the Plaintiff's to a form of "Jim Crow" racial segregation.[24] This denial was also a derogation of

their Fourteenth Amendment right to "Equal Protection of the Law," and their Fourth Amendment

right to be free from "Unreasonable Searches and Seizures."

### COUNT I.   FOURTH AMENDMENT ("UNREASONABLE SEARCH AND SEIZURE") CLAIM AGAINST GRADY JUDD, SHERIFF OF POLK COUNTY SHERIFF'S OFFICE; 42 U.S.C. §1983

23.     The Plaintiff hereby re-alleges and re-states averments 1 through 14, which should be read

as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P.

24.     **Defendant Grady Judd, Sheriff of Polk County, operated a policy or custom of**

**stopping and detaining persons who had previously engaged in peaceful protests, and**

**preventing them from entering into the local Bartow courthouse.**

     a.     **The Plaintiffs had a reasonable expectation of privacy that, should they not**

          **have any weapons or other items on their person, that would set off the**

          **security alarm/ metal-detector system, which is located the entrance of the**

          **Bartow Courthouse, that they would be able to enter the Courthouse just as**

---

[24] See, e.g., "EQUAL ACCESS TO PUBLIC ACCOMMODATION: Although integrating the nation's schools was the first priority of the civil rights movement, the denial of equal access to public accommodations affected all blacks, not just students. Blacks could not use restaurants, bathrooms, water fountains, public parks, beaches, or swimming pools used by whites. They had to use separate entrances to doctor's offices and sit in separate waiting rooms. They could only sit in the balcony or in other designated areas of theaters. They had to ride at the back of streetcars and buses." https://www.virginiahistory.org/collections-and-resources/virginia-history-explorer/civil-rights-movement-virginia/equal-access

        other civilian citizens entered the courthouse, without being prohibited or under the threat of being arrested and detained.

b.     The Defendant Sheriff violated the Plaintiffs Fourth Amendment Right to a reasonable expectation of privacy by enforcing the above-mentioned official policy.

c.     The Plaintiffs also had a Fourth Amendment right to be free from an unreasonable seizure.  The Plaintiffs could not walk past the metal detector, without being unreasonably seized and arrested by the Defendant Sheriff.

d.     The Defendant violated the Plaintiffs Fourth Amendment Right to be free from an unreasonable seizure by enforcing the above-mentioned official policy.

25.     On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson, Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida. And while doing so, they exercised a series of rights under the First Amendment, U.S. Constitution:

a.     The right to petition the state or local government for the redress of grievances;

b.     The right and freedom of assembly; and,

c.     The right and freedom of speech.

26.     On that same date, the Plaintiffs were informed by employees/ agents of Defendant Grady Judd Sheriff of Polk County, that it administered or operated a law, custom, policy, regulation and (or) practice of not allowing "protesters" to enter the Polk County Courthouse building.  Defendant Sheriff's Office's employees communicated to the Plaintiffs that they could not walk past the metal-detector machine, and the Plaintiffs reasonably and objectively

understood that if they did so, that they would be arrested and detained.

27.     The said custom, policy, regulation, and practice of not allowing protesters to enter the Polk County Courthouse curtailed, chilled, limited and restricted the Plaintiff's Fourth Amendment Right to a "reasonable expectation of privacy" and to be "free from an unreasonable seizure."

**28.     For the reasons stated in paragraph 27 above, the Sheriff's Deputies who stopped the Plaintiffs had no constitutional or legal basis for restraining their movement. There was no "reasonable, articulable suspicion" that a crime was about to occur, and there was not "probable cause" to restrict or to detain their movement; or to prevent them from further entering into the courthouse; or the threaten their arrest and detention, should they exercise the constitutional rights to freely enter the courthouse.  This restriction, prevention, or detention was made solely because the Plaintiffs had engaged in First Amendment protest; and was therefore "an unreasonable seizure."**

29.     WHEREFORE, <u>since the Defendant would not have taken the same action, absent the Plaintiffs protected speech</u>, the Plaintiffs demand:

A.     Trial by Jury.

B.     Judgment against the Defendants for attorney's compensatory and punitive

damages, as permitted under law.

C.     Affirmative Action, as deemed appropriate by the Court.

D.     Injunctive Relief on behalf the Plaintiffs and on behalf on an entire class of persons who express their First Amendment Rights, as deemed appropriate by the Court.

E.     Attorney's fees and costs.

F.     For whatever additional relief as is deemed just and appropriate by this honorable

Court.

## COUNT II.   FOURTH AMENDMENT
## RETALIATION CLAIM AGAINST DEFENDANT
## G4S; 42 U.S.C. §1983

**30.**     The Plaintiff hereby re-alleges and re-states averments 1 through 24, which should be read

as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P.

**31.     Defendant G4S, a private entity, is hereby sued under 42 U.S. C. § 1983, to preserve**

**the civil-rights objectives of that statute against arbitrary actions of private entities. See,**

**e.g.,** *West v. Atkins***, 487 U.S. 42 (1988).**

**32.     Defendant G4S operated a policy or custom of stopping and detaining persons who**

**had previously engaged in peaceful protests, and preventing them from entering into the**

**local Bartow courthouse.**

> **a.     The Plaintiffs had a reasonable expectation of privacy that, should they not**
>
> **have any weapons or other items on their person, that would set off the**
>
> **security alarm/ metal-detector system, which is located the entrance of the**
>
> **Bartow Courthouse, that they would be able to enter the Courthouse just as**
>
> **other civilian citizens entered the courthouse, without being prohibited or**
>
> **under the threat of being arrested and detained.**
>
> **b.     The Defendant G4S violated the Plaintiffs Fourth Amendment Right to a**
>
> **reasonable expectation of privacy by enforcing the above-mentioned official**
>
> **policy.**
>
> **c.     The Plaintiffs also had a Fourth Amendment right to be free from an**

**unreasonable seizure.  The Plaintiffs could not walk past the metal detector, without being unreasonably seized and arrested by the Defendant G4S.**

**d.      The Defendant violated the Plaintiffs Fourth Amendment Right to be free from an unreasonable seizure by enforcing the above-mentioned official policy.**

33.      On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson, Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida. And while doing so, they exercised a series of rights under the First Amendment, U.S. Constitution:

a.      The right to petition the state or local government for the redress of grievances;

b.      The right and freedom of assembly; and,

c.      The right and freedom of speech.

34.      On that same date, the Plaintiffs were informed by employees/ agents of Defendant G4S, that it administered or operated a law, custom, policy, regulation and (or) practice of not allowing "protesters" to enter the Polk County Courthouse building.  Defendant G4S's employees communicated to the Plaintiffs that they could not walk past the metal-detector machine, and the Plaintiffs reasonably and objectively understood that if they did so, that they would be arrested and detained.

35.      The said custom, policy, regulation, and practice of not allowing protesters to enter the Polk County Courthouse curtailed, chilled, limited and restricted the Plaintiff's Fourth Amendment Right to a "reasonable expectation of privacy" and to be "free from an unreasonable seizure."

**36.      For the reasons stated in paragraph 35 above, the Sheriff's Deputies who stopped the**

**Plaintiffs had no constitutional or legal basis for restraining their movement. There was no "reasonable, articulable suspicion" that a crime was about to occur, and there was not "probable cause" to restrict or to detain their movement; or to prevent them from further entering into the courthouse; or the threaten their arrest and detention, should they exercise the constitutional rights to freely enter the courthouse. This restriction, prevention, or detention was made solely because the Plaintiffs had engaged in First Amendment protest; and was therefore "an unreasonable seizure."**

37.     WHEREFORE, <u>since the Defendant would not have taken the same action, absent the Plaintiffs protected speech</u>, the Plaintiffs demand:

G.     Trial by Jury.

H.     Judgment against the Defendants for attorney's compensatory and punitive

damages, as permitted under law.

I.     Affirmative Action, as deemed appropriate by the Court.

J.     Injunctive Relief on behalf the Plaintiffs and on behalf on an entire class of persons who express their First Amendment Rights, as deemed appropriate by the Court.

K.     Attorney's fees and costs.

L.     For whatever additional relief as is deemed just and appropriate by this honorable Court.

**COUNT III.     THIRTEENTH AMENDMENT ("BADGE OF SLAVERY");
42 U.S.C. §1983 AGAINST DEFENDANT SHERIFF GRADY JUDD**

**38.**     The Plaintiff hereby re-alleges and re-states averments 1 through 24, which should be read

as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P.

**39.**     **Defendant Grady Judd, Sheriff of Polk County, operated a policy or custom of stopping and detaining persons who had previously engaged in peaceful protests, and preventing them from entering into the local Bartow courthouse.**

    **a.**     **The Plaintiffs had a reasonable expectation of privacy that, should they not have any weapons or other items on their person, that would set off the security alarm/ metal-detector system, which is located the entrance of the Bartow Courthouse, that they would be able to enter the Courthouse just as other civilian citizens entered the courthouse, without being prohibited or under the threat of being arrested and detained.**

    **b.**     **The Defendant Sheriff violated the Plaintiffs' Thirteenth Amendment constitutional right to a reasonable expectation of privacy and to not be subjected to a "badge of slavery," by enforcing the above-mentioned official policy.**

    **c.**     **The Plaintiffs also had a Thirteenth Amendment right to be free from an unreasonable seizure (i.e., "badge of slavery"). The Plaintiffs could not walk past the metal detector, without being unreasonably seized and arrested by the Defendant Sheriff, thus violating the Thirteenth Amendment's prohibition against "slavery" or "badges and incidents of slavery."**

    **d.**     **The Defendant violated the Plaintiffs Thirteenth Amendment Right to be free from an unreasonable seizure (i.e., "badges of slavery") by enforcing the above-mentioned official policy, in violation of § 1983.**

40.     On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson,

Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida. And while doing so, they exercised a series of rights under the First Amendment, U.S. Constitution:

    a.    The right to petition the state or local government for the redress of grievances;

    b.    The right and freedom of assembly; and,

    c.    The right and freedom of speech.

41.    On that same date, the Plaintiffs were informed by employees/ agents of Defendant Grady Judd Sheriff of Polk County, that it administered or operated a law, custom, policy, regulation and (or) practice of not allowing "protesters" to enter the Polk County Courthouse building.  Defendant Sheriff's Office's employees communicated to the Plaintiffs that they could not walk past the metal-detector machine, and the Plaintiffs reasonably and objectively understood that if they did so, that they would be arrested and detained.

**42.**    The said custom, policy, regulation, and practice of not allowing protesters to enter the Polk County Courthouse curtailed, chilled, limited and restricted the Plaintiff's Thirteenth Amendment Right to be free from "badges or incidents of slavery," and right to a "reasonable expectation of privacy" and to be "free from an unreasonable seizure."

**43.**    **For the reasons stated in paragraph 42 above, the Sheriff's Deputies who stopped the Plaintiffs had no constitutional or legal basis for restraining their movement. There was no "reasonable, articulable suspicion" that a crime was about to occur, and there was not "probable cause" to restrict or to detain their movement; or to prevent them from further entering into the courthouse; or the threaten their arrest and detention, should they exercise the constitutional rights to freely enter the courthouse.  This restriction, prevention, or detention was made solely because the Plaintiffs had engaged in First Amendment protest;**

24

**and was therefore "an unreasonable seizure," in violation of the Thirteenth Amendment's prohibition against slavery and involuntary servitude.**

44.     WHEREFORE, <u>since the Defendant would not have taken the same action, absent the Plaintiffs protected speech</u>, the Plaintiffs demand:

      M.     Trial by Jury.

      N.     Judgment against the Defendants for attorney's compensatory and punitive

damages, as permitted under law.

      O.     Affirmative Action, as deemed appropriate by the Court.

      P.     Injunctive Relief on behalf the Plaintiffs and on behalf on an entire class of persons

who express their First Amendment Rights, as deemed appropriate by the Court.

      Q.     Attorney's fees and costs.

      R.     For whatever additional relief as is deemed just and appropriate by this honorable

Court.

### COUNT IV.     THIRTEENTH AMENDMENT ("BADGE OF SLAVERY"); 42 U.S.C. §1983 AGAINST G4S

**45.**     The Plaintiff hereby re-alleges and re-states averments 1 through 24, which should be read as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P.

**46.     Defendant G4S, a private entity, is hereby sued under 42 U.S. C. § 1983, to preserve the civil-rights objectives of that statute against arbitrary actions of private entities. See, e.g., _West v. Atkins_, 487 U.S. 42 (1988).**

**47.     Defendant G4S, operated a policy or custom of stopping and detaining persons who**

had previously engaged in peaceful protests, and preventing them from entering into the local Bartow courthouse.

    a.    The Plaintiffs had a reasonable expectation of privacy that, should they not have any weapons or other items on their person, that would set off the security alarm/ metal-detector system, which is located the entrance of the Bartow Courthouse, that they would be able to enter the Courthouse just as other civilian citizens entered the courthouse, without being prohibited or under the threat of being arrested and detained.

    b.    The Defendant G4S violated the Plaintiffs' Thirteenth Amendment constitutional right to a reasonable expectation of privacy and to not be subjected to a "badge of slavery," by enforcing the above-mentioned official policy.

    c.    The Plaintiffs also had a Thirteenth Amendment right to be free from an unreasonable seizure (i.e., "badge of slavery").  The Plaintiffs could not walk past the metal detector, without being unreasonably seized and arrested by the Defendant G4S, thus violating the Thirteenth Amendment's prohibition against "slavery" or "badges and incidents of slavery."

    d.    The Defendant G4S violated the Plaintiffs Thirteenth Amendment Right to be free from an unreasonable seizure (i.e., "badges of slavery") by enforcing the above-mentioned official policy, in violation of § 1983.

48.    On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson, Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida. And while doing so, they exercised a series of

rights under the First Amendment, U.S. Constitution:

      a.     The right to petition the state or local government for the redress of grievances;

      b.     The right and freedom of assembly; and,

      c.     The right and freedom of speech.

49.     On that same date, the Plaintiffs were informed by employees/ agents of Defendant G4S, that it administered or operated a law, custom, policy, regulation and (or) practice of not allowing "protesters" to enter the Polk County Courthouse building.  Defendant G4S employees communicated to the Plaintiffs that they could not walk past the metal-detector machine, and the Plaintiffs reasonably and objectively understood that if they did so, that they would be arrested and detained.

50.     The said custom, policy, regulation, and practice of not allowing protesters to enter the Polk County Courthouse curtailed, chilled, limited and restricted the Plaintiff's Thirteenth Amendment Right to be free from "badges or incidents of slavery," and right to a "reasonable expectation of privacy" and to be "free from an unreasonable seizure."

**51.     For the reasons stated in paragraph 50 above, the G4S officers who stopped the Plaintiffs had no constitutional or legal basis for restraining their movement. There was no "reasonable, articulable suspicion" that a crime was about to occur, and there was not "probable cause" to restrict or to detain their movement; or to prevent them from further entering into the courthouse; or the threaten their arrest and detention, should they exercise the constitutional rights to freely enter the courthouse.  This restriction, prevention, or detention was made solely because the Plaintiffs had engaged in First Amendment protest; and was therefore "an unreasonable seizure," in violation of the Thirteenth Amendment's prohibition against slavery and involuntary servitude.**

52.     WHEREFORE, <u>since the Defendant would not have taken the same action, absent the</u>

<u>Plaintiffs protected speech</u>, the Plaintiffs demand:

S.     Trial by Jury.

T.     Judgment against the Defendants for attorney's compensatory and punitive

damages, as permitted under law.

U.     Affirmative Action, as deemed appropriate by the Court.

V.     Injunctive Relief on behalf the Plaintiffs and on behalf on an entire class of persons

who express their First Amendment Rights, as deemed appropriate by the Court.

W.     Attorney's fees and costs.

X.     For whatever additional relief as is deemed just and appropriate by this honorable

Court.


**COUNT V.       FIRST AMENDMENT ("OVERBROAD AND CHILLING EFFECT");
42 U.S.C. §1983 AGAINST DEFENDANT SHERIFF GRADY JUDD**

**53.**     The Plaintiff hereby re-alleges and re-states averments 1 through 24, which should be read
as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P.

**54.     Defendant Grady Judd, Sheriff of Polk County, operated a policy or custom of**
**stopping and detaining persons who had previously engaged in peaceful protests, and**
**preventing them from entering into the local Bartow courthouse. The above-referenced**
**policy or custom was "overbroad" and thus had a "chilling effect" upon the Plaintiffs'**
**ability to engage in First Amendment protest and speech.**

28

55.      The said custom, policy, regulation, and practice of not allowing protesters to enter the Polk County Courthouse curtailed, chilled, limited and restricted the Plaintiff's First Amendment freedom to protest, speak, or to petition the government to redress their grievances.

a.      First off, the Plaintiffs themselves experienced humiliation and bodily anguish from having to hold their urination and to walk one or more blocks to the nearest restroom;

b.       Second, the protest had to be ended due to sanitation and health concerns, stemming from the lack of access to the restrooms inside of the Polk County Courthouse;

c.      Third, there is no evidence that when the Plaintiffs attempted to enter the Sheriff's Office, that they were actually in the "mode of protesting" at that very moment when they sought to enter the building;

d.      Fourth, the Plaintiffs were not "protestors" at the very moment when the G4S Security Officer blocked them from trying to enter the building, but they were, instead civilians just like all the other citizens who were freely entering and exiting the Polk County Courthouse; and,

e.      Fifth, the Plaintiffs were similarly-situated to all persons who freely enter the courthouse who are not party-litigants but who endeavor to avail themselves of a statutory or constitutional right to enter the courthouse, whether to observe a jury trial as a member of the general public or to engage in another form of free expression, free speech, of freedom of peaceable assembly.

56.      The said custom, policy and practice of "not allowing protesters" to enter the Polk County Courthouse was wrongfully applied to the Plaintiffs who were at that very moment when they were seeking entrance, non-protesters. They had been peaceful protesters just moments prior to seeking entrance into the Polk County courthouse. And there was no justifiable basis for denying

them entrance into the Polk County courthouse.

57.     At the very moment when the Plaintiffs' sought entrance into the Polk County Courthouse, they were in essence **"former protesters"**[25] who were not in fact engaging in any protests. Thus, the G4S security/ Polk County Deputy Sheriff officers **implementation of such an "overbroad" policy was tantamount to effectuating a "retaliatory" or "chilling effect" upon** the Plaintiffs' constitutional First Amendment freedoms, simply because the Plaintiffs had formerly engaged in a protest against the Sheriff's Office, or because they might engage in a protest against the Polk County Government or against the Polk County Sheriff's Office at some point in the future. There is no evidence to show that the Security Officer knew whether the Plaintiffs were "done protesting" or "done protesting and going into the Polk County Courthouse to transact legitimate business" or "done protesting and going home after using the public restroom." There is also no evidence to show that the G4S security officer

reasonably believed that the Plaintiffs were seeking entrance into the building in order to demonstrate or to launch a protest inside of the Polk County Courthouse. There was no compelling governmental interest to justify denying the Plaintiffs peaceful entrance into the Polk County Courthouse. This denial of entrance into the Polk County Courthouse, then, was a clear case of constitutional abuse.

58.     On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson, Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida. And while doing so, they exercised a series of rights under the First Amendment, U.S. Constitution:

---

[25] In other words, the Defendants has not legitimate, rational, or compelling interests in regulating the Plaintiffs under a theory that the Plaintiffs would be disruptive, stage protests inside of the courthouse, or do any other activity that would be disruptive, or constitute disruptive behavior.

a.      The right to petition the state or local government for the redress of grievances;

b.      The right and freedom of assembly; and,

c.      The right and freedom of speech.

59.      On that same date, the Plaintiffs were informed by employees/ agents of Defendant Grady Judd Sheriff of Polk County, that it administered or operated a law, custom, policy, regulation and (or) practice of not allowing "protesters" to enter the Polk County Courthouse building.  Defendant Sheriff's Office's employees communicated to the Plaintiffs that they could not walk past the metal-detector machine, and the Plaintiffs reasonably and objectively understood that if they did so, that they would be arrested and detained.

**60.**      The said custom, policy, regulation, and practice of not allowing protesters to enter the Polk County Courthouse curtailed and chilled the Plaintiff's First Amendment Right to freedom of assembly, association, speech, conscience, and to petition the government for the redress of grievances.

**61.      For the reasons stated herein above in this Count, the Sheriff's Deputies who stopped the Plaintiffs had no constitutional or legal basis for restraining their movement. There was no "reasonable, articulable suspicion" that a crime was about to occur, and there was not "probable cause" to restrict or to detain their movement; or to prevent them from further entering into the courthouse; or the threaten their arrest and detention, should they exercise the constitutional rights to freely enter the courthouse.  This restriction, prevention, or detention was made solely because the Plaintiffs had engaged in First Amendment protest; and was therefore a violation of the First Amendment, U.S. Constitution and 42 U.S.C. § 1983.**

62.     WHEREFORE, <u>since the Defendant would not have taken the same action, absent the</u> <u>Plaintiffs protected speech</u>, the Plaintiffs demand:

Y.      Trial by Jury.

Z.      Judgment against the Defendants for attorney's compensatory and punitive

damages, as permitted under law.

AA.     Affirmative Action, as deemed appropriate by the Court.

BB.     Injunctive Relief on behalf the Plaintiffs and on behalf on an entire class of persons

who express their First Amendment Rights, as deemed appropriate by the Court.

CC.     Attorney's fees and costs.

DD.     For whatever additional relief as is deemed just and appropriate by this honorable

Court.

## COUNT VI.     FIRST AMENDMENT ("OVERBROAD AND CHILLING EFFECT"); 42 U.S.C. §1983 AGAINST DEFENDANT G4S

**63.**     The Plaintiff hereby re-alleges and re-states averments 1 through 24, which should be read as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P.

64.     **Defendant G4S, a private entity, is hereby sued under 42 U.S. C. § 1983, to preserve the civil-rights objectives of that statute against arbitrary actions of private entities. See, e.g., *West v. Atkins*, 487 U.S. 42 (1988).**

65.     **Defendant G4S, operated a policy or custom of stopping and detaining persons who had previously engaged in peaceful protests, and preventing them from entering into the local Bartow courthouse. The above-referenced policy or custom was "overbroad" and thus had a "chilling effect" upon the Plaintiffs' ability to engage in First Amendment protest and**

32

**speech.**

66.      The said custom, policy, regulation, and practice of not allowing protesters to enter the Polk County Courthouse curtailed, chilled, limited and restricted the Plaintiff's First Amendment freedom to protest, speak, or to petition the government to redress their grievances.

     a.      First off, the Plaintiffs themselves experienced humiliation and bodily anguish from having to hold their urination and to walk one or more blocks to the nearest restroom;

     b.       Second, the protest had to be ended due to sanitation and health concerns, stemming from the lack of access to the restrooms inside of the Polk County Courthouse;

     c.      Third, there is no evidence that when the Plaintiffs attempted to enter the Polk County Courthouse, that they were actually in the "mode of protesting" at that very moment when they sought to enter the building;

     d.      Fourth, the Plaintiffs were not "protestors" at the very moment when the G4S Security Officer blocked them from trying to enter the building, but they were, instead civilians just like all the other citizens who were freely entering and exiting the Polk County Courthouse; and,

     e.      Fifth, the Plaintiffs were similarly-situated to all persons who freely enter the courthouse who are not party-litigants but who endeavor to avail themselves of a statutory or constitutional right to enter the courthouse, whether to observe a jury trial as a member of the general public or to engage in another form of free expression, free speech, of freedom of peaceable assembly.

69.      The said custom, policy and practice of "not allowing protesters" to enter the Polk County Courthouse was wrongfully applied to the Plaintiffs who were at that very moment when they were seeking entrance, non-protesters. They had been peaceful protesters just moments prior to

seeking entrance into the Polk County courthouse. And there was no justifiable basis for denying them entrance into the Polk County courthouse.

70.     At the very moment when the Plaintiffs' sought entrance into the Polk County Courthouse, they were in essence **"former protesters"[26]** who were not in fact engaging in any protests. Thus, the G4S security/ Polk County Deputy Sheriff officers' **implementation of such an "overbroad" policy was tantamount to effectuating a "retaliatory" or "chilling effect" upon** the Plaintiffs' First Amendment freedoms, simply because the Plaintiffs had formerly engaged in a protest against the Sheriff's Office, or because they might engage in a protest against the Polk County Government or against the Polk County Sheriff's Office at some point in the future. There is no evidence to show that the Security Officer knew whether the Plaintiffs were "done protesting" or "done protesting and going into the Polk County Courthouse to transact legitimate business" or "done protesting and going home after using the public restroom." There is also no evidence to show that the G4S security officer reasonably believed that the Plaintiffs were seeking entrance into the building in order to demonstrate or to launch a protest inside of the Polk County Courthouse. There was no compelling governmental interest to justify denying the Plaintiffs peaceful entrance into the Polk County Courthouse. This denial of entrance into the Polk County Courthouse, then, was a clear case of constitutional abuse.

71.     On November 8, 2019, at approximately 4:30 p.m., the Plaintiffs PMJA, Cowart, Gibson, Herring, and others were engaged in a peaceful protest in front of the Polk County Courthouse at 255 North Broadway Avenue in Bartow, Florida. And while doing so, they exercised a series of rights under the First Amendment, U.S. Constitution:

---

[26] In other words, the Defendants has not legitimate, rational, or compelling interests in regulating the Plaintiffs under a theory that the Plaintiffs would be disruptive, stage protests inside of the courthouse, or do any other activity that would be disruptive, or constitute disruptive behavior.

     a.      The right to petition the state or local government for the redress of grievances;

     b.      The right and freedom of assembly; and,

     c.      The right and freedom of speech.

72.     On that same date, the Plaintiffs were informed by employees/ agents of Defendant G4S, that it administered or operated a law, custom, policy, regulation and (or) practice of not allowing "protesters" to enter the Polk County Courthouse building.  Defendant Sheriff's Office's employees communicated to the Plaintiffs that they could not walk past the metal-detector machine, and the Plaintiffs reasonably and objectively understood that if they did so, that they would be arrested and detained.

73.     The said custom, policy, regulation, and practice of not allowing protesters to enter the Polk County Courthouse curtailed and chilled the Plaintiff's First Amendment Right to freedom of assembly, association, speech, conscience, and to petition the government for the redress of grievances.

**74.     For the reasons stated herein above in this Count, the G4S officers who stopped the Plaintiffs had no constitutional or legal basis for restraining their movement. There was no "reasonable, articulable suspicion" that a crime was about to occur, and there was not "probable cause" to restrict or to detain their movement; or to prevent them from further entering into the courthouse; or the threaten their arrest and detention, should they exercise the constitutional rights to freely enter the courthouse.  This restriction, prevention, or detention was made solely because the Plaintiffs had engaged in First Amendment protest; and was therefore a violation of the First Amendment, U.S. Constitution and 42 U.S.C. § 1983.**

75.     WHEREFORE, <u>since the Defendant would not have taken the same action, absent the</u>

<u>Plaintiffs protected speech</u>, the Plaintiffs demand:

     a.     Trial by Jury.

     b.     Judgment against the Defendants for attorney's compensatory and punitive

damages, as permitted under law.

     c.     Affirmative Action, as deemed appropriate by the Court.

     d.     Injunctive Relief on behalf the Plaintiffs and on behalf on an entire class of persons

who express their First Amendment Rights, as deemed appropriate by the Court.

     e.     Attorney's fees and costs.

     f.     For whatever additional relief as is deemed just and appropriate by this honorable

Court.

### COUNT VII. CLAIM FOR INJUNCTIVE RELIEF AGAINST THE CHIEF JUDGE, TENTH JUDICIAL CIRCUIT (STATE OF FLORDIA); POLK COUNTY SHERIFF'S OFFICE; AND G4S SECURE SOLUTIONS (USA), INC.; 42 U.S.C. §1983

76.     For purposes of County VII,  the mission statement or mission of the Plaintiff Poor &

Minority Justice Association is hereby expressly stated as follows:

     Plaintiff PMJA, Inc. is a civil rights organization that concentrates its efforts in protesting abusive police practices and other related civil rights violations. The PMJA, Inc.'s membership is almost entirely African American. Plaintiffs Cowart, Gibson, and Herring, are all African American. And the membership of the Church of God the Bible Way, Inc. is almost entirely African American. These regular and recurring activities on the part of the PMJA, Inc., constitutes First Amendment freedoms and liberties, as such: free exercise of religion; freedom of speech; the right of the people peaceably to assemble; and the right to petition the Government for a redress of grievances.  Therefore, the Defendants' current policy of prohibiting, limiting, or restricting protestors from exercising their First Amendment freedoms has a direct negative impact on the ability of the PMJA, Inc. to engage in future protests.  There are, indeed, many social and political issues which are impacting the communities of color in the State of Florida and around the nation (e.g.,

"Black Lives Matter" and other similar issues, such as protests over the police killings of George Floyd and Breonna Taylor). Pastor Cowart is directly and indirectly affiliated with national organizations and has, since the incident stated in this complaint, coordinated with local Black Lives Matter affiliates, to assist with organizing other demonstrations. The PMJA, Inc. is a legitimate civil rights and human rights organization; and plans to organize demonstrations at the Bartow-Polk County Courthouse: AS SOON A COVID-19 PANDEMIC restrictions are render it feasible and safe. The PMJA, Inc. has also contemplating organizing a "test case" protest, in order to "test" the current restroom policy at the Bartow Polk County Courthouse or other similar local government agency. The future injury to the PMJA, Inc is not remote, but it is both immediate and imminent.

77.     The PMJA, Inc. shall conduct a Demonstration at the Bartow-Polk County Courthouse within the next week to 120 days, in order to protest police misconduct regarding George Floyd, Breonna Taylor and other similar local cases. As such the injunctive relief is sought in Count V.

78.     WHEREFORE, the Plaintiff hereby re-alleges and re-states averments 1 through 77, which should be read as a complete sub-part to this claim for relief, as per Rule 8 of the Fed.R.Civ.P. Counts I though IV are hereby reasserted and stated.

      a.     **The Defendants, including the Chief Judge, Tenth Judicial Circuit (State of Florida), are liable** for the acts committed and therefore should provide costs, attorneys fees and injunctive relief pursuant to 42 U.S.C. §§ 1983, 1988.

      b.     The Defendant Chief Judge, Tenth Judicial Circuit (State of Florida), as a co-defendant, is liable for the acts committed and alleged against the Defendant G4S in this Complaint (First, Fourth, and Thirteenth Amendment violations), and therefore should provide injunctive relief pursuant to 42 U.S.C. § 1983.

      c.     The Defendant Chief Judge, Tenth Judicial Circuit (State of Florida) is liable for the acts committed and alleged against the Defendant Grady Judge, Sheriff of Polk County, in this Complaint (First, Fourth, and Thirteenth Amendment violations), and therefore should provide injunctive relief pursuant to 42 U.S.C. § 1983.

79.     Sovereign Immunity will not shield the Defendant Chief Judge, Tenth Judicial Circuit, under the allegations set forth in this count, together with those of Counts I through IV, because a claim for **injunctive relief** can be brought against the State of Florida pursuant to 42 U.S.C. § 1983.

80.     The Plaintiff PMJA, Inc. shall engage in a follow-up protest in the near future. As it is a civil rights organization, it will likely engage in future protests at the Polk County Courthouse. This Count V is alleged and asserted in order to remedy past constitutional misconduct and to prevent future constitutional misconduct.

81.     The Chief Judge, Tenth Judicial Circuit (State of Florida) maintains a policy, custom, usage, or regulation, as defined in 42 U.S.C. § 1983, which prohibits peaceful First Amendment protestors from entering into the courthouse, in order to use its restrooms <u>and</u> apparently for any other reason—whether on official court business or as a member of the public seeking to attend a court hearing.

**<u>Significantly, although the Plaintiffs reasons for entering the Polk County Courthouse was so that they could avail themselves of using the public restrooms in that building, the reasons which Defendant G4s and Defendant Grady Judd's deputy sheriffs gave for not allowing the Plaintiffs to enter into the courthouse were never given, other than "we do not allow protesters to enter the courthouse," or words to that effect</u>**.

82.      No compelling interests exists to support such a broad policy of disallowing peaceful First Amendment protesters from breaking the picket lines on the outskirts or a courthouse building in order to enter the building in order to use the restroom.

38

83.     Therefore, injunctive relief is hereby requested. The current social, political, and racial climate of Polk County and the present relationship between the communities' police officers, deputy sheriffs, and private security officers now require judicial and administrative oversight in order to ensure that the human dignity, humanity, fundamental constitutional rights, security, and safety of all stakeholders within the community of Polk County are adequately protected. For this reason, the Plaintiffs hereby demand that the Defendant Chief Judge, Tenth Judicial Circuit, provide: **(#77 (a) –(e) omitted):**

f.      **<u>Injunction</u>:**   Training for bailiffs, police officers, deputy sheriffs, and bailiffs on honoring and protecting the First Amendment freedoms of local citizens who engage in peaceful protests.

g.      **<u>Injunction</u>:**   Written First Amendment guidelines for persons to read before they engage or participate in community protests; and,

h.      **<u>Injunction</u>:**    Implementation of a "Community Oversight Task Force" so as to ensure that (a) training of police officers, deputy sheriffs, bailiffs, private security officers, etc.,; (b) the adoption of written First Amendment guidelines for community activists and protestors; and (c) the implementation of any new standard operating procedures regarding (a) or (b), are adequate and adequately enforced.

i.      **<u>Injunction</u>:**   "Community Oversight Task Force" members shall include, but not be limited to:

        (1).    Judges

        (2).    Lawyers

        (3).    Police Officers

(4).    Members of the Clergy

(5).    Community Activists

(6).    Other interested persons, but particularly those persons with specialized expertise regarding the subject-matter of the Task Force.

84.    The Plaintiffs further request that this honorable court order the Defendants to designate one person from each of the named party-defendants who shall meet with the Plaintiffs and their representatives to conduct a meeting to adopt and implement a "Community Oversight Task Force": **(#78 (a) – (h) omitted:**

j.    **Injunction:** The number of person who shall serve on that task force; and the frequency of the meetings.

k.    **Injunction:** The parties shall meet-and-confer with each other in good faith.

l.    **Injunction:** The failure to meet-and-confer, to conduct meetings, or to attend meetings shall be in violation of this consent decree.

m.    **Injunction:** The Community Oversight Task Force shall address the problems facing First Amendment Protestors from the perspective that African American or other non-white protesters are more likely to encounter discrimination from the local police force, including courthouse staff and administrators.

n.    **Injunction:** Therefore, the Community Oversight Task Force shall monitor and address the problems of partial and discriminatory applications of courthouse and courtroom policies and procedures that have a discriminatory or adverse impact upon African Americans or other non-white minority groups.

85.    Plaintiffs request that the Community Oversight Task Force shall establish standard

operating procedures for all First Amendment Protestors to follow when they believe that their constitutional rights have been violated.

o.      **Injunction:** Impartial Policing. The task force shall educate the police and the general public on the need to protect First Amendment Freedoms and impartial policing of First Amendment protestors.

p.      **Injunction:** First Amendment Protesters. The task force shall educate First Amendment protestors, with in-person conferences, print materials, or electronic media, on the parameters of peaceful, lawful protests.

q.      **Injunction:** Freedom of Unpopular Speech and Viewpoints at or near the Courthouse premises. The task force shall educate the police and First Amendment protestors as to protected speech and protected activity, and unlawful protest activity.   The task force shall explore methods to combat against unfair discrimination against First Amendment protestors who in a peaceful, lawful manner espouse unpopular or unorthodox causes.

r.      **Injunction:** Adoption of Clear Rules and Policies to ensure preservation of First Amendment Freedoms. The standing policy of the Community Oversight Task Force shall be to establish standard operating procedures for the local police, the courthouse administrative staff, and the general public to follow when regulating or exercising First Amendment activities.

86.     WHEREFORE, since the Defendants would not have taken the same action, absent the Plaintiffs protected speech, the Plaintiffs demand:

A.      Affirmative Action, as deemed appropriate by the Court.

B.      Injunctive Relief, as deemed appropriate by the Court.

C.      Attorney's fees and costs.

      D.      For whatever additional relief as is deemed just and appropriate by this honorable

Court.

                                          RESPECTFULLY SUBMITTED:


                                        **/s/ Roderick O. Ford**

                                        Roderick O. Ford, Esq.
                                        FBN: 0072620
                                        The Methodist Law Centre
                                        POOR & MINORITY JUSTICE ASSOCIATON—
                                        LEGAL DEFENSE FUND, INC.
                                        400 N. Ashley Drive
                                        Suite 1900
                                        Tampa, Florida 33602
                                        (813) 223-1200
                                        (800) 792-2241 facsimile
                                        laboradvocate@fordlawfirm.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via CM/ECF to:

Hank B. Cambell, Esq.
Edward B. Kerr, Esq.
(Attorneys for Grady Judd,
Sheriff of Polk County)
Campbell, Trohn, Tamayo
& Aranda, P.A.
P. O. Box 2369
Lakeland, FL. 33806-2369

Eugenia Iznayulova, Esq.
(Attorney For Chief Judge, 10th Judicial Circuit)
Office of the Attorney General
501 E. Kennedy Blvd.
Suite 1100
Tampa, FL. 33602

Irwin Gilbert, Esq.
(Attorney For G4S Corporation)
Conrad & Scherer, LLP
633 S. Federal Highway
P. O. Box 14723
Ft. Lauderdale, FL. 33301

Served on October 29, 2020.

**/s/ Roderick O. Ford**
Roderick O. Ford, Esq.